Michael KING, by his guardian, Delores KING, Susan Roe, Mary Roe, Carolyn Romer, by her guardians, William and Ella Romer, individually, and on behalf of all others similarly situated; Parents and Friends for Alternate Living, Inc. ("Pal"); Autism Society of Rhode Island, Inc., Plaintiffs,

v.

Dawn SULLIVAN, Director of Rhode Island's Department of Human Services; Thomas Romeo, Director of Rhode Island's Department of Mental Health, Retardation and Hospitals; Robert L. Carl, Ph.D., Executive Director of the Division of Retardation and Developmental Disabilities, Department of Mental Health, Retardation and Hospitals, Defendants.

C.A. No. 89–0366L.

United States District Court,
D. Rhode Island.

Nov. 5, 1991.

Barry Best, Providence, R.I., for plaintiffs.

Deborah Clarke, Dept. of Mental Health, Retardation and Hospitals, Ronald LeBel, Dept. of Human Services, Cranston, R.I., Terrence Tierney, Office of Atty. Gen., State of R.I., Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

### I. INTRODUCTION

This matter is before the Court on the motion of the Plaintiff Class, under Fed. R.Civ.P. 56, for summary judgment. Plaintiff class consists of adult citizens of Rhode Island who seek placement in private intermediate care facilities for the mentally retarded ("ICF–MR"), residential facilities that provide 24–hour care and supervision to persons who can benefit from active treatment. Defendants are State officials who are responsible for administering Rhode Island's Medicaid ICF–MR programs.

Title XIX of the Social Security Act, commonly known as the Medicaid Act, 42 U.S.C.A. §§ 1396—1396u (West Supp. 1991), creates a cooperative relationship between the federal government and states that elect to share the medical expenses of persons who have limited financial resources. *See, generally, Thomas v. Johnston,* 557 F.Supp. 879, 882 (W.D.Tex.1983). Rhode Island's participation in the Medicaid program is optional, but since Rhode Island has elected to participate, it must comply with the Act's requirements. *Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). When the Secretary of Health and Human Services ("HHS") approves a state's Medicaid plan ("State Plan") pursuant to 42 U.S.C. § 1396c, the federal government contributes to the state's Medicaid costs in exchange for the state's compliance with its State Plan and the Medicaid Act. The character and details of the state's obligations arise from the commitments the state makes in its State Plan, which, through the Medicaid Act and its regulations, binds the state as a matter of federal law.

Plaintiffs brought this class action in 1989, seeking declaratory and injunctive relief. Essentially, Plaintiffs charge that Rhode Island does not spend enough money on ICF–MR services, in violation of federal law. Currently at issue is whether Plaintiffs are entitled to summary judgment to compel the State to make more community-based, group home ICF–MR services available to them, and to bring the State's ICF–MR application and review pro-

cedures in line with federal requirements. For the reasons that follow, Plaintiffs' motion is denied.

## II. DISCUSSION

### A. Standards for Summary Judgment and Review

Rule 56(c) of the Federal Rules of Civil Procedure provides the standard for ruling on a summary judgment motion:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A dispute over facts in a case does not necessarily preclude summary judgment, as long as the facts and all reasonable inferences drawn from them support judgment for the moving party. *Continental Casualty Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991).

This Court, however, cannot grant a motion for summary judgment if genuine issues of material fact exist. Any fact that could affect the outcome of the suit is material. *Ryan, Klimek, Ryan Partnership v. Royal Ins. Co. of Am.*, 728 F.Supp. 862, 866 (D.R.I.), *aff'd*, 916 F.2d 731 (1st Cir.1990). The Court must look at the record in the light most favorable to the party opposing the motion, here the Defendants, indulging all inferences favorable to that party. *Id.* The moving party will not prevail on a claim unless the parties do not dispute any facts that could affect the outcome of the litigation over the claim.

Plaintiffs must also overcome a second large obstacle at this summary judgment stage. If there is no dispute over material facts, Plaintiffs must then demonstrate either that the State abused its wide discretion in administering its Medicaid program, or that the State failed to adhere to federal statutes or regulations. *Smith v. Miller*, 665 F.2d 172, 178 (7th Cir.1981); *Mary Washington Hosp., Inc. v. Fisher*, 635 F.Supp. 891, 897 (E.D.Va.1985).

This is certainly a difficult task. The Social Security Act is among the most intricate of all federal laws. *See Schweiker v. Gray Panthers*, 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981). Judges have lamented its "labyrinthine complexity," *Friedman v. Berger*, 547 F.2d 724, 727 (2d Cir.1976), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977), and characterized it as "an aggravated assault upon the English language, resistant to attempts to understand it," *Friedman v. Berger*, 409 F.Supp. 1225, 1226 (S.D.N.Y.1976), *cited in Schweiker*, 453 U.S. at 43 n. 14, 101 S.Ct. at 2640 n. 14. Unfortunately, Plaintiffs have done little to improve this Court's understanding of the legal basis for their claims. Although many of Plaintiffs' claims require painstaking analysis of the Medicaid Act and the corresponding federal regulations, Plaintiffs have presented an over-simplified and partly distorted interpretation of the Act.

Because Defendants contest Plaintiffs' version of numerous important facts, however, this Court need not address many of the finer legal points raised in the Complaint. Summary Judgment is inappropriate for all of Plaintiffs' claims.

### B. Plaintiffs' Claims

The loose organization of Plaintiffs' Amended Class Action Complaint ("Complaint") has required this Court to re-organize the claims. Plaintiffs do not arrange their claims under traditional "counts" based on alleged violations of separate legal principles. Instead, they make 23 distinct demands for relief, many of which are based on the same statutes and regulations. Complaint, pp. 24–30. It is useful to reduce these 23 demands to eight general allegations, grouped as follows. The Court requests that the parties use this organizational structure in future arguments.

Plaintiffs allege five general substantive violations of federal Medicaid law. (I) Defendants allegedly do not promptly provide Medical Assistance services to all eligible

individuals,[1] in violation of 42 U.S.C. § 1396a(a)(8). (II) Defendants allegedly do not provide necessary medical services in "amount, duration, and scope sufficient to meet the purposes of the Medical Assistance program,"[2] an alleged violation of 42 U.S.C. § 1396a(a)(10)(B) and 42 C.F.R. § 440.230(b). (III) Defendants allegedly fail to make ICF–MR services equally available to all members of a Medical Assistance eligibility category,[3] in violation of 42 U.S.C. § 1396a(a)(10)(B) and 42 C.F.R. § 440.240(b). (IV) Defendants allegedly do not make Medical Assistance payments that are sufficient to enlist new providers so that covered services are as available to recipients as to the general population,[4] in violation of 42 U.S.C. § 1396a(a)(30) and 42 C.F.R. § 447.204. (V) Defendants allegedly fail to give Plaintiffs freedom to choose their ICF–MR providers,[5] in violation of 42 U.S.C. § 1396a(a)(23) and 42 C.F.R. § 431.51(b).

Additionally, Plaintiffs claim three general procedural violations of the Medicaid Act. (VI) More than one State agency allegedly administers the State's Medical Assistance program,[6] which Plaintiffs claim violates 42 U.S.C. § 1396a(a)(5) and 42 C.F.R. § 431.10. (VII) Defendants allegedly deny Plaintiffs an opportunity to obtain a timely ICF–MR level-of-care determination or referral to ICF–MR providers,[7] in violation of 42 U.S.C. § 1396a(a)(8) and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. (VIII) When Defendants deny requests for ICF–MR placement or level-of-care determinations, they allegedly fail to provide notice of denial, reasons for denial, and notice of the availability of administrative review,[8] in violation of 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. § 431.206.

In connection with all eight general claims, Plaintiffs also aver separate violations of their civil rights under 42 U.S.C. § 1983.[9]

Based on the foregoing allegations, Plaintiffs additionally ask the Court to order Defendants (a) to develop and implement a plan that will accurately measure the needs of Rhode Island's population that is eligible for ICF–MR services,[10] (b) to provide ICF–MR services to Plaintiffs at facilities outside Rhode Island until the terms of such a plan are met,[11] and (c) to grant any other relief that is just and proper.[12]

### C. Analysis

#### Claim I

■ Plaintiffs have failed to establish that there are no genuine issues of material fact concerning their claim that Defendants do not promptly provide Medical Assistance services to eligible individuals, and that Defendants apply eligibility criteria that are more stringent than federal law allows. Plaintiffs base their claim on 42 U.S.C. § 1396a(a)(8), which requires every State Plan to "provide that ... medical assistance under the plan ... shall be furnished with reasonable promptness to all eligible individuals." Plaintiffs have not shown that *eligible individuals* are not receiving *medical assistance under the State Plan.*

Financial and medical considerations determine Medicaid eligibility. The Medicaid Act first classifies potential recipients, according to financial need, as either "categorically needy" or "medically needy." *See* 42 U.S.C.A. §§ 1396a(a)(10)(A) & (C) (West Supp.1991); *Massachusetts Ass'n of Older Am. v. Sharp*, 700 F.2d 749, 750 (1st

1. Complaint, paras. 109, 116, Prayers for Relief Nos. 4(e), 4(f), 5(b).

2. Complaint, para. 110, Prayer No. 4(g).

3. Complaint, para. 111, Prayer No. 4(h).

4. Complaint, para. 112, Prayer No. 4(j).

5. Complaint, para. 113, Prayer No. 4(i).

6. Complaint, para. 114.

7. Complaint, para. 115, Prayer Nos. 4(a) & 4(b).

8. Complaint, para. 117, Prayer Nos. 4(c) & 4(d).

9. Complaint, paras. 109–117.

10. Complaint, Prayer No. 5(a).

11. Complaint, Prayer No. 5(c).

12. Complaint, Prayer No. 6.

Cir.1983). Under the Medicaid Act, the "categorically needy" automatically receive at least minimum Medicaid services when they receive another form of federal assistance, such as Aid to Families with Dependent Children or the Supplemental Security Income program. 42 U.S.C. § 1396a(a)(10)(A) (1988).

The "medically needy" are other persons who do not qualify as "categorically needy" but who, in the state's judgment, cannot afford to pay for certain kinds of medical care. *See id.* § 1396a(a)(10)(C). "Medically needy" persons have no entitlements that a state does not choose to include in its State Plan. *Id.; Preterm, Inc. v. Dukakis,* 591 F.2d 121, 124, 125 n. 3 (1st Cir.), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979). The "medically needy" may be divided into further sub-groups, as defined by their more particular medical needs. *See* 42 C.F.R. §§ 440.-230(a)(2) & 440.240(b) (1990); *Schweiker v. Hogan,* 457 U.S. 569, 573–74 n. 6, 102 S.Ct. 2597, 2601–02 n. 6, 73 L.Ed.2d 227 (1982).

■ Federal law does not set a minimum level of ICF–MR services that a state must provide. *See Briarcliff Haven, Inc. v. Dep't of Human Resources,* 403 F.Supp. 1355, 1361–62 (N.D.Ga.1975). The Medicaid statute seeks to enable each state to provide medical assistance "as far as practicable under the conditions in such State." 42 U.S.C. § 1396 (1988). Unless a participating state chooses to expand its State Plan beyond the bare minimum requirements of the Medicaid Act, "categorically needy" persons are only entitled to certain inpatient and outpatient hospital services, laboratory and X-ray services, skilled nursing facility services, periodic diagnostic services, family planning services, physician services, dental surgery, mid-wife services, and pediatric nurse-practitioner services. 42 U.S.C.A. §§ 1396a(a)(10)(A) & 1396a(a)(1–5), (17), (21) (West Supp.1991). A participating state has the option not to offer ICF–MR services at all. 42 U.S.C. §§ 1396a(a)(10)(C)(iv) & 1396a(a)(31) (1988).

If a state includes ICF–MR services in its State Plan, as Rhode Island has done, then the state is free to set which level of ICF-MR care it will offer above the minimal requirements of 42 U.S.C. §§ 1396a(a)(10)(C)(iv). The state retains "substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in 'the best interests of the recipients.'" *Alexander v. Choate,* 469 U.S. 287, 303, 105 S.Ct. 712, 721, 83 L.Ed.2d 661 (1985) (quoting 42 U.S.C. § 1396a(a)(19)).

■ Defendants have provided sufficient evidence to show, for summary judgment purposes, that Rhode Island has offered all Plaintiffs the option of placement in the Joseph H. Ladd Center, a public ICF–MR in Exeter, Rhode Island. In order to prevail at this stage, Plaintiffs must show that placement in the Ladd Center is not what the Medicaid Act means by "medical assistance under the plan." 42 U.S.C. § 1396a(a)(8) (1988). They have not done this.

Placement in the Ladd Center undoubtedly is "medical assistance under the plan." Plaintiffs have directed this Court to excerpts from Rhode Island's State Plan, which sets forth that ICF–MR services "including such services in a public institution" are "provided ... *with limitations*" to the "categorically needy" and some "medically needy" persons. Plaintiffs' Exhibit No. 9, pp. 1–2 (emphasis added). Plaintiffs do not, however, provide the Court with those pages of the State Plan that describe what the stated limitations entail.

■ Conceding that Rhode Island's State Plan also includes coverage for some private ICF–MR services, Defendants point out that the medical eligibility criteria for ICF–MR placement under the State Plan require "medical necessity." Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment ("Defendants' Memorandum"), p. 53. Rhode Island seeks to avoid institutional placement and to encourage home care whenever possible. *Id.* Such a restriction on eligibility is proper, as is Rhode Island's policy of offering home care assistance as an alternative to institutional care. 42

U.S.C. § 1396n(d) (1988), 42 C.F.R. §§ 440.-230(d) & 441.300–310 (1990). The Medicaid Act does not require a more lenient ICF–MR admissions standard than that set forth in the State Plan.

■ Plaintiffs charge that Defendants will only place eligible persons in community residential facilities in "emergency" circumstances. Defendants dispute this with sufficient evidence to create a genuine issue of fact. Defendants' Statement of Facts, pp. 6–13. But even assuming, *arguendo*, that Defendants make private ICF–MR placements only in emergency circumstances, the State is obliged to furnish ICF–MR services only to the extent that its State Plan offers them. It is not enough that people who financially and medically qualify for Medicaid-assisted ICF–MR services want or need community residential services and are not receiving them. The State Plan must promise community residential services to Plaintiffs before the State's failure to provide such services can constitute a violation of federal law.

Plaintiffs have not shown that Rhode Island's State Plan promises community residential services to them. They have not discussed the State Plan, and so they have not shown that they meet the State Plan's "medical necessity" criteria. Therefore, they have failed to show that eligible persons do not receive assistance that is available to them under the State Plan. Accordingly, summary judgment on this claim is unwarranted, and the Court need not address the issue of promptness.

*Claim II*

■ Plaintiffs have not proved that they are entitled to judgment as a matter of law on their claim that Defendants do not provide necessary medical services in "'amount, duration, and scope' sufficient to meet the needs of the Medical Assistance program...." Complaint, para. 110. To support this claim, Plaintiffs point to 42 C.F.R. § 440.230(b), which states: "Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose." The crucial interpretative problem, then, is understanding what is meant

by "its purpose." As a simple semantic matter, of course, "its purpose" means *the purpose of "each service."*

■ Contrary to Plaintiffs' contention, the Medicaid statute and regulations do not dictate a level of services that is sufficient in "amount, duration, and scope" to meet the purposes *of the Medicaid program.* Such a rule would, in essence, imply a federally-mandated minimum level of services that a state must provide; this would run counter to the flexible and cooperative nature of state participation in Medicaid. Instead, this regulation requires that any medical assistance service provided be adequate to *reasonably* achieve the purposes *of the medical assistance service that the state offers in its State Plan.* See *Virginia Hosp. Ass'n v. Kenley,* 427 F.Supp. 781, 785 (E.D.Va.1977).

The State retains substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage. *Alexander,* 469 U.S. at 303, 105 S.Ct. at 721. As the Supreme Court has explained:

> [M]edicaid programs do not guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs. Instead, the benefit provided through Medicaid is a particular package of health care services.... That package of services has the general aim of assuring that individuals will receive necessary medical care, but the benefit provided remains the individual services offered—not "adequate health care."

*Id.* The same HHS regulation cited by Plaintiffs, only one sentence later, adds: "The [state] agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230(d) (1990).

■ When a state commits itself to providing Medicaid services, 42 C.F.R. § 440.-230(b) simply obligates the state to provide them adequately, so that the state does not nominally recognize its obligations while failing to meet them financially. And the state need not meet its obligations perfectly. A service is sufficient in amount, dura-

tion, and scope if it adequately meets the needs of *most* individuals eligible for Medicaid assistance to pay for that service. *Charleston Memorial Hosp. v. Conrad,* 693 F.2d 324, 330 (4th Cir.1982); *Virginia Hosp. Ass'n,* 427 F.Supp. at 786.

The determinative question, therefore, is: Does Rhode Island provide ICF–MR services that, for most eligible persons, reasonably meet the standards of ICF–MR care set forth in its State Plan? *See Virginia Hosp. Ass'n,* 427 F.Supp. at 785–86.

Plaintiffs have failed to produce adequate evidence relating to this issue. In contrast, Defendants have produced ample evidence to indicate that every Plaintiff has been offered placement at the Ladd Center, a public ICF–MR. In order to prevail on this claim, Plaintiffs would have to show that Rhode Island's State Plan promises *private* ICF–MR or group home placement to all persons in Plaintiffs' eligibility groups, and, if so, that the State does not provide such placement for *most* eligible recipients. Plaintiffs' argument supporting their motion for summary judgment neither addresses this question nor identifies evidence relating to it, and so this part of their motion fails.

### Claim III

■ Plaintiffs have not proved that they are entitled to judgment as a matter of law on their claim that Defendants do not make ICF–MR services equally available to all members of a Medical Assistance eligibility category. Plaintiffs assert incorrectly that 42 U.S.C. § 1396a(a)(10)(B) requires the State to provide the same level of services to everyone receiving Medicaid. Plaintiffs' Memorandum, pp. 25–26. This subsection requires a State Plan for medical assistance to provide:

> that the medical assistance made available to any individual described in subparagraph (A)—
>> (i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual, and
>> (ii) shall not be less in amount, duration, or scope than the medical assist-

ance made available to individuals not described in subparagraph (A)....

Individuals "described in subparagraph (A)" are only the "categorically needy." *Massachusetts Ass'n of Older Am.,* 700 F.2d at 750.

Plaintiffs misinterpret this reference. In their memorandum in support of their motion for summary judgment, Plaintiffs quote 42 U.S.C. § 1396a(a)(10)(B) as follows:

> the medical assistance made available to any *["categorically needy" or "medically needy" recipient]* shall not be less in amount, duration, or scope than the Medical Assistance made available to any other such individual....

Plaintiffs' Memorandum in Support of Their Motion for Summary Judgment ("Plaintiffs' Memorandum"), p. 26 (emphasis added). This creative use of brackets, ostensibly to simplify the quoted passage, actually misrepresents its meaning. The "medically needy" do not belong inside the brackets. Only the assistance available to the "categorically needy" may not be less in "amount, duration, and scope" than the assistance available to others. *Camacho v. Perales,* 786 F.2d 32, 39 (2d Cir.1986).

The subsection at issue, 42 U.S.C. § 1396a(a)(10)(B), sets forth a requirement that the "categorically needy" receive at least the same level of protection as the "medically needy," and that "categorically needy" individuals receive equal treatment vis-à-vis each other. *Schweiker,* 457 U.S. at 573–74 n. 6, 102 S.Ct. at 2601–02 n. 6; *Massachusetts Ass'n of Older Am.,* 700 F.2d at 753. This subsection is clearly not a guarantee that "medically needy" persons will receive the same services as the "categorically needy." Services made available to the "medically needy" may be less in "amount, duration, or scope" than the benefits afforded to the "categorically needy," who, as a group, are entitled to "first call on the limited supply of public funds for medical assistance." *Camacho,* 786 F.2d at 39.

Within the same sub-group of "medically needy" persons, states must distribute funds equitably, so that benefit and hard-

ship are shared. 42 C.F.R. § 440.240(b) (1990); *Schweiker*, 457 U.S. at 573 n. 6, 102 S.Ct. at 2601 n. 6; *White v. Beal*, 555 F.2d 1146, 1150–51 (3d Cir.1977). But nothing in the statute prohibits a state from offering different services to persons in different categories of medical need or with different degrees of medical necessity. *White*, 555 F.2d at 1150–51.

■ In order to prevail on this claim by a summary judgment motion, therefore, Plaintiffs must prove either that (1) persons who are "medically needy" are receiving ICF–MR services that are greater in amount, duration, or scope than services received by persons who are "categorically needy"; (2) "categorically needy" persons receive disparate services; or (3) persons within a particular category of "medical need" are offered unequal services vis-à-vis each other.

Many unresolved issues of material fact remain concerning the financial eligibility and medical needs of the various Plaintiff class members. Plaintiffs have not sufficiently addressed the factual issue of comparability within eligibility groups, perhaps because Plaintiffs have incorrectly characterized 42 U.S.C. § 1396a(a)(10)(B) as requiring Rhode Island to provide the same level of services to anyone receiving Medicaid. Without pointing to specific facts—and ignoring, in particular, the need to show facts relating to the eligibility groups to which Plaintiffs belong and the distribution of services within each group— Plaintiffs simply assert that "Defendants' violation of [42 U.S.C. § 1396a(a)(10)(B) ] is plain." Plaintiffs' Memorandum, p. 36.

Defendants' alleged violation, however, is not plain. Defendants have presented evidence that the Plaintiff class is made up of individuals with very different needs. Defendants' Statement of Facts, pp. 33–34. It is safe to say, in fact, that the needs of each class member are unique. A major reason for the delays in finding private ICF–MR or group home placement for many of the class members is that the State, by necessity, must arrange patients in groups who can live compatibly together. Moreover, although Plaintiffs can demon-

strate that the ICF–MR services they *receive* are different from the ICF–MR services provided to others, they have not given this Court any basis for finding that a material discrepancy exists between the services *offered* to Plaintiffs and those offered to others within the same need categories.

This Court has not seen uncontroverted proof that persons are treated differently within the same categories of need. Thus, Plaintiffs have not met their burden of showing that they are entitled to relief on this claim as a matter of law.

### Claim IV

■ Plaintiffs have not proved that they are entitled to judgment as a matter of law on their claim that Defendants do not make Medical Assistance payments that are sufficient to enlist new providers. The subsection of the Act underlying this claim requires the State's payments to be "consistent with efficiency, economy, and quality of care" and be "sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." 42 U.S.C.A. § 1396a(a)(30)(A) (West Supp.1991). The corresponding federal regulation, 42 C.F.R. § 447.204, employs essentially the same language.

Plaintiffs point to no clear violation of these payment rate provisions. Plaintiffs simply charge that there is insufficient ICF–MR provider participation in Rhode Island. Plaintiffs' Memorandum, p. 37. They do not, however, define what level of payments would be "sufficient" under the law. The closest Plaintiffs come to proposing a standard is to quote *DeGregorio v. O'Bannon*, 500 F.Supp. 541, 550 (E.D.Pa. 1980), in which the District Court held that 42 C.F.R. § 447.204 would be violated if "sufficient beds are not made available" to qualified nursing home patients. In that case, Pennsylvania suffered a severe shortage of nursing home beds. Eligible Medicaid patients were experiencing difficulty gaining admission to private nursing

homes because private patients were able to pay more than the Commonwealth's Medicaid reimbursement rate. *Id.* at 544.

 *DeGregorio* makes clear that, when a state chooses to offer a service under its State Plan, 42 U.S.C. § 1396a(a)(30)(A) and 42 C.F.R. § 447.204 function to prevent gross disparity between the availability of that service to Medicaid patients and its availability to those who can afford to pay privately. *Clark v. Kizer*, 758 F.Supp. 572, 576 (E.D.Cal.1990). The reimbursement rate must be set "sufficiently high to allow some marginal profit in servicing medicaid patients to enough ... facilities so as to ensure that medicaid patients have substantial access to such facilities." *DeGregorio*, 500 F.Supp. at 550. The "sufficiency" of a state's reimbursement payments is measured against the payments that a health care facility can demand from non-Medicaid patients. *Id.* at 544; *see also Clark*, 758 F.Supp. at 577. But the Act avoids setting an *absolute* level of reimbursement that defines what is "sufficient" under federal law. *See Rosado v. Wyman*, 397 U.S. 397, 408, 90 S.Ct. 1207, 1215, 25 L.Ed.2d 442 (1970).

In the instant case, Plaintiffs have not shown that privately funded ICF–MR applicants enjoy an advantage over Medicaid applicants in gaining access to facilities. In response to Defendants' interrogatories, Plaintiffs concede that they "do not know of ICF–MR providers who have refused or are unwilling to provide ICF–MR services in Rhode Island because of Rhode Island's payment system." Defendants' Statement of Facts, p. 40. Instead, Plaintiffs simply allege a shortage of available ICF–MR placements. Plaintiffs' Memorandum, p. 38. Defendants dispute this shortage, and they have pointed to evidence that all eligible persons, including Plaintiffs, have already been offered public ICF–MR placement. Defendants' Statement of Facts, pp. 26–28.

There are also other genuine issues of material fact, but the Court need not enumerate them here. Plaintiffs clearly have not shown a violation of 42 U.S.C. § 1396a(a)(30). Therefore, they are not en-titled to judgment as a matter of law on this claim.

### Claim V

 Plaintiffs have not proved that they are entitled to judgment as a matter of law on their claim that Defendants fail to give Plaintiffs freedom to choose ICF–MR providers. The relevant section of the Medicaid Act provides:

> [A]ny individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, *qualified* to perform the service or services required (including an organization which provides such services, or arranges for their availability, on a prepayment basis), who undertakes to provide him such services....

42 U.S.C. § 1396a(a)(23) (1988) (emphasis added); *see also* 42 C.F.R. § 431.51(b) (1990).

 This "freedom of choice," however, is not absolute. *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 177 (2d Cir.) (citing *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 785, 100 S.Ct. 2467, 2475, 65 L.Ed.2d 506 (1980)), *cert. denied*, — U.S. ——, 112 S.Ct. 300, 116 L.Ed.2d 244 (1991). Congress intended for this subsection to give applicants the right to choose among qualified providers without government interference. *Id.* at 178. When several qualified providers of a service exist, the state may not dictate where a Medicaid recipient is to receive treatment. *See Briarcliff Haven*, 403 F.Supp. at 1362; *Bay Ridge Diagnostic Lab., Inc. v. Dumpson*, 400 F.Supp. 1104, 1106–08 (E.D.N.Y.1975). But this subsection does not obligate a state to expand its State Plan so that recipients have a menu of available ICF–MR services and providers from which to choose. *See Town Court Nursing Ctr.*, 447 U.S. at 785 n. 18, 100 S.Ct. at 2475 n. 18; *Warr v. Horsley*, 705 F.Supp. 540, 544 (M.D.Ala.1989).

By demanding a literal "choice" of ICF–MRs, Plaintiffs are essentially asking this Court to compel Rhode Island to expand its State Plan so that vacancies always exist to

give applicants a selection among several appropriate facilities. Such a ruling would go well beyond the requirements of the Medicaid statute, both in letter and in spirit. Rhode Island's treasury is not limitless, as the Medicaid Act emphatically recognizes. 42 U.S.C. § 1396 (1988). The State is required to deliver no more than what the State Plan promises. If a service is not compensable under the State Plan, then a recipient has no freedom to choose it. *See District of Columbia Podiatry Soc'y v. District of Columbia,* 407 F.Supp. 1259, 1266 n. 32 (D.D.C.1975).

Although the Court cannot require Rhode Island to make more ICF–MR beds available, Plaintiffs, nevertheless, assert that Defendants' practice of matching applicants with particular ICF–MR providers violates the "freedom of choice" provision. This Court strongly believes, however, that this subsection should not be construed to prohibit the State from matching recipients with appropriate providers when doing so is the only feasible way to allocate the services. In order for the State to provide ICF–MR services, unlike other kinds of medical assistance, the State necessarily must match recipients to their providers. An ICF–MR provider is categorically different from other, more generic types of health care providers. Laboratory services, for example, are available from numerous sources, and recipients normally have little difficulty finding appropriate laboratories for their needs. But no comparably large supply of ICF–MR providers exists, and matching an ICF–MR applicant to an appropriate facility is an extremely difficult and delicate process. *See* Defendants' Statement of Facts, pp. 30–35. Maintaining vacant spaces at Rhode Island's ICF–MRs would be enormously expensive to the providers, so beds are filled quickly when they become available.

Defendants do not arbitrarily dictate to an applicant which ICF–MR he or she will enter. Instead, placing an applicant with an appropriate intermediate care facility is a cooperative process between applicant and provider. *See* Defendants' Statement of Facts, p. 31. If a possible appropriate placement is available, the applicant will meet with the provider. If the provider determines that it can satisfy the applicant's needs, then the provider will offer the applicant a place. If the provider cannot meet the applicant's needs, then it does not recommend placement, and the applicant will wait for another opening. *Id.*

Matching applicants to facilities is simply the only rational way to allocate limited private ICF–MR and group home bedspace. As long as there is scarcity of resources, Rhode Island will have to decide who will benefit from private ICF–MR services and who will have to wait for them. If the State could not match applicants to ICF–MR openings, then it would have to fill ICF–MR vacancies either randomly, on a first-come, first-served basis, or by a competitive bidding process. None of these alternative methods, of course, is consistent with the Plaintiffs' individual medical needs and the goals of the Medicaid program.

■■■ The "freedom of choice" subsection cannot prevent the State from adopting administrative processes that are necessary for allocating and delivering its limited medical assistance funds efficiently. Matching applicants to appropriate intermediate care facilities and group homes is a necessary practice.

Accordingly, Plaintiffs are not entitled to summary judgment on this claim.

### Claim VI

■■■ Plaintiffs have not shown that they are entitled to judgment as a matter of law on their claim that several State agencies administer the State's Medical Assistance program. Plaintiffs have represented that 42 U.S.C. § 1396a(a)(5) requires that a single state agency "administer" the ICF–MR program. Plaintiffs' Memorandum, p. 10. This assertion misrepresents the statute. Section 1396a(a)(5) requires that a State Plan provide for a single state agency "to administer *or to supervise the administration of* the plan." 42 U.S.C. § 1396a(a)(5) (1988) (emphasis added). The statute does not require states to use only one agency to carry out every task that is

part of the State Plan. *See* 42 C.F.R. § 431.10(e)(3) (1990) (setting rules for proper delegation of authority to other state offices). Plaintiffs have not alleged or proved that Defendants have improperly supervised the Department of Mental Health, Retardation & Hospitals ("MHRH") and the Division of Retardation and Developmental Disabilities ("DORDD") in violation of federal law. Plaintiffs' charge that Defendants have delegated certain decision-making authority to MHRH and DORDD, therefore, alleges no violation of federal law.

### *Claim VII*

██ Plaintiffs have not proved that they are entitled to summary judgment on the claim that Defendants deny them an opportunity to obtain timely ICF–MR level-of-care determinations or referrals to ICF–MR providers. Defendants do not dispute that all named Plaintiffs are eligible for ICF–MR services, but they contend that Plaintiffs have already received ICF–MR level-of-care determinations, have been offered public ICF–MR care, and are currently receiving Medicaid services.

The relevant section of the Medicaid Act, 42 U.S.C. § 1396a(a)(8), requires that a State Plan:

> provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals.

HHS regulations further state:

> The agency must afford an individual wishing to do so the opportunity to apply for Medicaid without delay.

42 C.F.R. § 435.906 (1990). The agency must also:

> [f]urnish Medicaid promptly to recipients without any delay caused by the agency's administrative procedures.

*Id.* § 435.930. Finally, the agency must:

> establish time standards for determining eligibility and inform the applicant of what they are. These Standards may not exceed ... [f]orty-five days for [all

applicants other than those who apply for Medicaid on the basis of disability].

*Id.* § 435.911.

Defendants have shown that all Plaintiffs have obtained ICF–MR level-of-care determinations and are currently receiving some sort of Medicaid services, although a factual dispute exists over whether Plaintiff Roe has been offered ICF–MR services. Plaintiffs have not demonstrated, for summary judgment purposes, that Defendants are violating these federal requirements in connection with Plaintiffs' initial entry into the Medicaid system.

██ A more complicated question is whether, under these regulations, a state must provide a timely level-of-care evaluation of recipients who require additional or different ICF–MR services than what they currently receive. Plaintiffs must concede that Rhode Island has deemed them eligible for Medicaid. Plaintiffs contend, however, that Rhode Island has not gone beyond that first step and deemed them eligible or ineligible for private ICF–MR placement. Defendants argue that, by determining that Plaintiffs are eligible for placement in the Ladd Center or for home-based waiver services, Rhode Island has met the requirements of federal law.

HHS regulations require occasional reevaluation of recipients' Medicaid eligibility. A participating state must redetermine the eligibility of Medicaid recipients at least every 12 months. *Id.* § 435.916(a). And when a state agency receives information about changes in a recipient's circumstances that may affect his or her eligibility, the agency must "promptly" redetermine eligibility. *Id.* § 435.916(c). While this regulation grew out of concerns that people might continue to receive assistance after their medical or financial needs have subsided, it also implicitly recognizes that a recipient's needs might grow. The regulation's command, in any event, is unambiguous.

As this Court interprets these regulations, the appropriate State agency has a duty to make a prompt redetermination of a current recipient's eligibility—a level-of-care determination—when the recipient for-

mally brings to the agency's attention a change in his or her circumstances that could make him or her eligible for a different level of services. Before the duty arises, the agency must actually receive the new information, *see id.*, and the information must reach the agency in a substantial format, such as in writing.

█ The mere filing of a request for community placement into a group home, using Department of Retardation Form 109, does not necessarily trigger the State's duty to redetermine eligibility. In order to obtain a re-evaluation, the recipient must provide information about changes in his or her circumstances that may affect his or her eligibility. Ideally, MHRH or the Department of Human Services should prepare new forms with which recipients can request re-evaluations and describe relevant changes in circumstances. With or without any such forms, however, recipients normally must first request a re-evaluation, supported by a description of new circumstances, before the State has a duty to re-evaluate their eligibility. Because procedural rights are best protected by formal mechanisms, this request should be in writing. HHS Regulations then require the State to complete any redetermination within 45 days of receiving the request and new information from the recipient. *Id.* § 435.911(a)(2).

By showing that their families are growing unable to care for them at home, named Plaintiffs Roe and Romer have submitted evidence that their personal circumstances have changed sufficiently to justify a re-evaluation of their eligibility for ICF–MR placement. Plaintiffs' Statement of Facts, pp. 48–52, 55–59. After these Plaintiffs—or any others—make proper formal applications to the appropriate agency, the State's duty to re-evaluate their eligibility will take effect.

Plaintiffs do not address the Fourteenth Amendment Due Process issue in their Memorandum, except to suggest that the Court need not reach this issue if the Court addresses the federal procedural statute and regulations. The Court agrees that, as a result of this holding based on the statute and regulations, it need not address the Constitutional issue.

### Claim VIII

█ Plaintiffs have not yet shown that they are entitled to summary judgment on the claim that Defendants fail to provide notice of denial of requests for ICF–MR placement, reasons for denial, and notice of availability of administrative review.

The relevant section of the Medicaid Act requires the State Plan to "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3) (1988). Corresponding HHS regulations add that the State agency must inform every applicant and recipient in writing of his right to a hearing, of the method for obtaining a hearing, and that he may appoint someone else, including an attorney, to represent him. 42 C.F.R. § 431.206 (1990).

Genuine issues of material fact surround this claim. Defendants have made a showing that all Plaintiffs are receiving Medicaid services, and that the CP-31 form used to notify applicants that they are eligible for waiver services also notifies them of the opportunity for administrative review. Defendants' Exhibit No. 3; Defendants' Statement of Facts, pp. 14–15. This Court is satisfied, for purposes of this summary judgment motion, that Defendants are violating no federal requirements in connection with Plaintiffs' entry into the Medicaid system. Nothing in the Medicaid Act or HHS regulations requires the State to provide notice of the right to review a level-of-care determination because the applicant considers it insufficient.

But, as noted above, the State must also make a prompt redetermination of a current recipient's eligibility when the recipient formally brings to the State's attention a change in his or her circumstances that could make the recipient eligible for a different level of care. When the State's duty to redetermine eligibility is triggered, the State must provide the corresponding pro-

cedural protections, including, if appropriate, notice of denial and of the right to administrative review. The State must make its decision with reasonable promptness—within 45 days—and grant an opportunity for a fair hearing if the re-evaluation does not result in the requested new level-of-care determination. *See* 42 U.S.C. § 1396a(a)(3) (1988); 42 C.F.R. § 435.-911(a)(2) (1990).

Plaintiffs have provided evidence that named Plaintiffs Roe and Romer have not received notice of denial and of their right to an administrative review of the State's delay in re-evaluating their current level-of-care determinations. Defendants essentially admit these assertions. But this Court is not satisfied, for summary judgment purposes, that these Plaintiffs have made requests for re-evaluation in a manner that would trigger the State's duty to make new level-of-care determinations and to provide the attendant procedural guarantees. Summary judgment is not yet appropriate.

All members of the Plaintiff class in this case have the power to apply formally to the State for re-evaluation. This right is not dependent on the status of the present litigation. When they properly file these applications, in accordance with this opinion, their procedural rights will immediately take effect.

### Section 1983

Plaintiffs point to no evidence that Defendants intended to deprive them of Constitutional rights. They do not press this claim in their oral or written argument. Summary judgment on this issue is not warranted. *See Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986) (mere lack of due care by state official does not create liability under section 1983).

### III. CONCLUSION AND ORDER

Accordingly, Plaintiffs' motion for summary judgment is denied.

It is so ordered.