**Anthony PISA, Plaintiff,**

**v.**

**UNDERWRITERS AT LLOYD'S, LONDON, Defendant.**

**Civ. A. No. 90–0593L.**

United States District Court, D. Rhode Island.

March 6, 1992.

Anthony Pisa, pro se.

Stephen P. Harten, Providence, R.I., Lawrence Dugan, Morrison, Mahoney & Miller, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

### I. INTRODUCTION

■ Anthony Pisa's tavern, the Golden Dream Restaurant, in Tiverton, Rhode Island, burned down on December 5, 1989. Pisa had insured the premises with a policy ("the Policy") from Underwriters at Lloyd's, London ("Underwriters"), which covered damage resulting from fire. Pisa brought this diversity suit[1] roughly one year after the fire to collect on the Policy and to seek additional compensation and punitive damages for financial loss and emotional distress allegedly resulting from Underwriters' failure to make timely payment on his claim.

Upon notification of the loss, Underwriters investigated the cause of the fire and concluded that it had started in a corner of the restaurant's basement, and that it was, as defendant's attorney explained in oral argument, "set by a human, intentional act." This case turns on Pisa's compliance with a contractual and statutory requirement that he submit to an examination under oath about the circumstances of the fire and that he produce financial records for inspection by the insurer.

Underwriters and Pisa have filed cross motions for summary judgment. For the reasons that follow, Underwriters' motion for summary judgment is granted, and Pisa's motion is denied.

### II. DISCUSSION

#### A. *Summary Judgment Standard*

■ Rule 56(c) of the Federal Rules of Civil Procedure provides the standard for ruling on a summary judgment motion:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A dispute over some facts does not preclude summary judgment if all the facts and reasonable inferences drawn from them support judgment for the moving party. *King v. Sullivan*, 776 F.Supp. 645, 649 (D.R.I.1991). The Court must view the record in the light most favorable to the party opposing the motion, indulging all inferences favorable to that party. *Id.*

#### B. *Analysis of Underwriters' Motion*

■ Because the Policy is a Rhode Island contract, Rhode Island's substantive law controls this dispute. Rhode Island statute law provides for a standardized fire

---

1. Although the facts on this point are not clear, since neither side provided the Court with a complete copy of the Policy, the beneficiary of the Policy is apparently Pisa's business, New England First Corporation, not Pisa himself. Technically, Pisa may lack standing to bring this suit in his individual capacity. Nonetheless, because the Court decides to grant summary judgment against the plaintiff—be it Pisa or his company—the Court need not address this question.

insurance policy with mandatory provisions applying to all fire insurance policies made in the state. R.I.Gen.L. ch. 27–5 (Michie 1989). The Policy expressly included these statutory provisions (and they would be controlling here even if they had not been stated in the Policy). Pursuant to R.I.Gen.L. § 27–5–3, the Policy included the following provisions:

> The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same, and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representatives, and shall permit extracts and copies thereof to be made. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve (12) months next after inception of the loss.

These provisions give Underwriters the option and ability to investigate claims of fire damage before paying claimants. The aim of these provisions is obviously to root out insurance fraud.

Pisa cannot recover payment under the Policy unless he can show that he has performed his contractual and statutory obligations. These obligations include providing Underwriters with access to whatever books of account, bills, invoices, and vouchers that Underwriters wish to see. This duty to provide the requested information does not arise under the discovery provisions of the Federal Rules of Civil Procedure, as Pisa contends; but rather the supplying of this information is a contractual precondition to Underwriters' duty to make payment on the claim.

Pisa clearly has not complied with this requirement. Apparently suspicious of arson, Underwriters have attempted to learn about Pisa's actions on the night of the fire and examine the financial condition of Pisa's business before the fire. This is a legitimate inquiry. R.I.Gen.L. ch. 27–5 (Michie 1989). But Pisa has frustrated Underwriters at every turn.

Pisa's evasion of Underwriters' questions and requests for access to business records is astounding. On August 13, 1990, Underwriters notified Pisa that he was scheduled to submit to an examination under oath on September 12. In the same letter, Underwriters asked Pisa to bring several business records to the examination.[2] At Pisa's request, the date was moved to September 26. On the morning of September 26, Pisa informed Underwriters that he would not appear. Underwriters did not object, and they rescheduled the examination. After further delays, Pisa finally submitted to the examination on December 6, 1990. He brought no records with him.

Asked about the missing business records, Pisa stated that everything but his company's checkbook had burned in the fire. Pisa Deposition, p. 48. Underwriters' attorney then questioned Pisa about his recollection of the restaurant's finances. Pisa claimed that he could not remember how much income he had reported on his 1989 federal tax return, who prepared the return, to which state he paid income taxes in 1989, who the officers and stockholders of the business were, where the corporation maintained its business office, where the restaurant kept its bank accounts,

---

**2.** Underwriters specifically requested Pisa's and his company's income tax returns for 1986–1989; all financial statements prepared for Pisa or his company between 1986 and the current date; all general ledgers; all cash disbursement journals; all monthly bank statements; all accounts payable and receivable listings; all inventory lists; all general journals; all payroll journals; all working trial balances; all transaction logs; all purchase and sales invoices for 1989; all payroll records for 1989; the fixed asset ledger; all loan documentation; copies of all canceled checks from 1989; the company's disbursement journal for 1989; all sales receipt journals, accounts receivable ledgers, and sales journals for 1988 and 1989; and a list of inventory on hand at the restaurant on December 5, 1989.

whether the corporation owned any property, whether the company employed an accountant, who was responsible for payroll at the restaurant, who kept the restaurant's checkbook, what the restaurant earned or spent in an average day, or what kind of inventory the restaurant had before the fire. *Id.* at pp. 11–13, 18–25, 41–43, 46, 64–68. In short, Pisa managed to avoid giving Underwriters any information that could help them understand Pisa's finances at the time of the fire. When the examination was over, Underwriters repeated their request for any existing financial documentation, specifically made a demand for the checkbook that Pisa said had survived the fire, and asked Pisa to authorize Underwriters to obtain copies of tax returns and other financial records not in his possession. Dugan letter of Dec. 21, 1990.

More than one year later, Pisa has still not provided any of the requested documents or an authorization to obtain records. His explanation at oral argument for this noncompliance insulted the Court's intelligence. During oral argument, the Court repeatedly asked Pisa, appearing pro se, why he did not sign authorization letters giving Underwriters permission to obtain copies of his tax returns and bank statements. Pisa could not give a direct answer. Although signing an authorization letter would cost him, at most, no more than a postage stamp, Pisa claimed that the expense of obtaining the records prevented him from cooperating. Pisa is fortunate that he was not under oath when making his transparently false statements to this Court.

■ The Court cannot weigh credibility when making a summary judgment decision. However, Pisa's failure of proof is so clear that his lack of credibility is irrelevant. Rule 56 forces Pisa to demonstrate, after adequate time for discovery, that he can establish all essential elements of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In an action on an insurance policy, the plaintiff must prove that he has performed the conditions set forth in the contract. *Daniel v. Pawtucket Mut. Ins.*

*Co.*, 506 A.2d 1032, 1033–34 (R.I.1986). There is no dispute that Pisa has failed to produce information that the insurance contract requires him to provide. Consequently, he cannot prove an essential element of his case. *See Stover v. Aetna Cas. & Sur. Co.*, 658 F.Supp. 156, 159–61 (S.D.W.Va. 1987). Therefore, pursuant to Rule 56, it is now time to end this litigation.

■ After oral argument, Pisa filed papers making an offer to produce records and sign an authorization for financial documents. It is too late now for Pisa to start cooperating. A Rule 56 motion puts an end to pre-trial maneuvering and compels the litigants to show the Court what they can prove at trial. The rule gives the plaintiff a deadline to come forth with his case, and it provides the strict penalty of dismissal for those who cannot prove a case. Delaying the performance of his contractual obligations in the apparent hope that he would not have to disclose damaging information, Pisa has missed his chance.

■ Finally, there is no merit in Pisa's argument that Underwriters waived their right under the Policy to demand information from him. The documents shown to this Court indicate that the several delays in scheduling Pisa's examination were for Pisa's benefit, and that Underwriters explicitly reserved all their rights when consenting to Pisa's delays. Underwriters never intentionally relinquished their known rights. *See Haxton's of Riverside, Inc. v. Windmill Realty, Inc.*, 488 A.2d 723, 725 (R.I.1985).

### C. *Analysis of Pisa's Motion*

Pisa's cross motion for summary judgment obviously must be denied. As the plaintiff in this action, Pisa cannot prevail if he cannot prove all the elements of his case. He has clearly failed to perform his own contractual obligations. Since the Court grants summary judgment to the defendant, the plaintiff's motion must necessarily fail.

### III. CONCLUSION AND ORDER

Accordingly, Underwriters' motion for summary judgment is granted. Pisa's mo-

tion for summary judgment is denied. The clerk shall enter judgment for the defendant, forthwith. It is so ordered.