**Bennie L. HINES and Katie Hines, Plaintiffs-Appellants,**

v.

**STATE FARM FIRE & CASUALTY COMPANY, Defendants-Appellees.**

No. 86–8651.

United States Court of Appeals, Eleventh Circuit.

April 24, 1987.

---

10. Wright Dep. pp. 143–44, 152–53.

Thomas R. Taggart, Taggart & Lakin, Savannah, Ga., for plaintiffs-appellants.

William H. Pinson, Jr., Beckmann & Pinson, PC., Edward M. Hughes, Savannah, Ga., for defendants-appellees.

Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and TUTTLE, Senior Circuit Judge.

HATCHETT, Circuit Judge:

Appellants, Bennie L. and Katie L. Hines (homeowners), appeal the decision of the district court granting summary judgment to State Farm Fire and Casualty Company in an action to recover under an insurance policy. We reverse and remand.

## FACTS

On December 20, 1984, the homeowners applied for a homeowner's insurance policy with State Farm Fire and Casualty Company (State Farm), through its Hinesville, Georgia agent, Sanford Carter. One of Carter's employees completed the application with information received from Mr. Hines. The application shows that to one question Mr. Hines answered "unemployed at present." To another question, the answer showed that Morris and Templeton Agency was the most recent homeowner's insurer. Under the section entitled "Other Interest on the Property," appears "fireplace has been closed in."

On January 14, 1985, a fire destroyed the insured property. The homeowners notified State Farm of the loss the next day. On February 7, 1985, State Farm sent a letter to the homeowners advising them of their obligations under the policy's provisions.[1] In this letter, State Farm did not

---

[1] 2. Your Duties After Loss. In case of a loss to which this insurance may apply, you shall see that the following duties are performed:
a. Give immediate notice to us or our agent, and in case of theft also to the police. In case of loss under the Credit Card coverage also notify the credit card company;
b. Protect the property from further damage or loss, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenditures;

c. Prepare an inventory of damaged or stolen personal property showing in detail, the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;
d. Exhibit the damaged property as often as we reasonably require and submit to examinations under oath;
e. Submit to us, within 60 days after the occurrence, your signed, sworn statement of

request that the homeowners produce copies of their federal income tax returns.

Soon after sending the letter, State Farm hired a private investigator to conduct an investigation to determine the nature and cause of the fire. On February 11, 1985, State Farm informed the homeowners that the fire was incendiary in origin and requested that they execute a "non-waiver agreement." [2] At the request of State Farm, the homeowners executed an "Information Release," prepared by State Farm authorizing any "banks, savings institutions, creditors, credit bureau, mortgagees, utility companies, employers and or governmental agencies to release information and/or records pertaining" to their monetary or financial transactions to State Farm. After completing the execution of the documents, State Farm informed the homeowners that the fire was incendiary in origin and that they had caused the loss. The homeowners were not represented by counsel during this period, but soon thereafter retained a lawyer.

On February 14, 1985, the homeowners' lawyer made a demand for payment under the policy claiming $86,800 for the residence and its contents. On February 19, 1985, State Farm advised the homeowners' lawyer that the fire resulted from arson and that State Farm was conducting an investigation to determine the persons responsible. State Farm rejected the demand for payment on the ground of noncompliance with the policy's requirements. As a

result, the homeowners submitted a new sworn proof of loss statement.

On April 29, 1985, State Farm deposed the homeowners. During the oral examination, the homeowners answered all of State Farm's questions, including those relating to their financial status and sources of income.

On May 2, 1985, State Farm wrote the homeowners' lawyer to affirm an alleged prior understanding that the homeowners would furnish copies of federal income tax returns and information relating to other claims submitted to another insurer of the property. On May 13, 1985, the homeowners' lawyer wrote State Farm stating:

> We did not agree to obtain copies of the requested income tax returns and submit them to you. It was agreed that we would make whatever information concerning Morris and Templeton Insurance Agency available to you, and as soon as the transcripts are sent to us, we will return the same to you.

The lawyer also requested that State Farm cancel the previously executed form authorizing the release of financial information and called upon State Farm to "please show" whether investigations into the homeowners' personal affairs were authorized under the policy.

In light of this request, State Farm cancelled the release form executed by the homeowners, but on June 7, 1985, requested authorization to acquire the homeowners' income tax returns from the Internal Revenue Service. State Farm did not

---

loss which sets forth, to the best of your knowledge and belief;
   (1) the time and cause of loss;
   (2) interest of the insured and all others in the property involved and all encumbrances on the property;
   (3) other insurance which may cover the loss;
   (4) changes in title or occupancy of the property during the term of this policy;
   (5) specifications of any damaged building and detailed estimates for repair of the damage;
   (6) an inventory of damaged or stolen personal property described in 2c;
   (7) receipts for additional living expenses incurred and records supporting the fair rental value loss.

2. The "nonwaiver agreement" reads as follows:
> For the following reason(s): 'The fire is of incendiary origin, there is a question as to whether or not the company is obligated under the policy. The undersigned voluntarily consent(s) and agree(s) that any action taken by State Farm Fire and Casualty Company ... in ascertaining the amount of loss and damage which occurred on January 14, 1985, to property located at Route 1, Box 20, Riceborough, Georgia, and in investigating the cause thereof, shall not waive or invalidate any of the terms or provisions of the policies of insurance or any rights of the company ... to deny liability for the loss, and shall not waive or invalidate any rights of any other party to this agreement.'

indicate the policy provision which entitled it to conduct investigations into the homeowners' personal affairs.

On July 3, 1985, State Farm informed the homeowners that they had not received the requested authorization nor the information relating to additional claims filed with other insurers. On September 16, 1985, after receiving no response, State Farm advised the homeowners that their claim had been denied.

On December 23, 1985, the homeowners filed suit in the District Court for the Southern District of Georgia to recover under the State Farm policy. State Farm filed a motion for summary judgment. The district court determined that the homeowners had failed to comply with certain conditions of the policy; consequently, they were banned from recovery under the policy. The district court entered summary judgment in favor of State Farm.

## DISCUSSION

Summary judgment should be granted only when evidence produced by the nonmoving party, when viewed in the light most favorable to that party, fails to establish genuine issues of material fact. *Tippens v. Celotex Corp.*, 805 F.2d 949 (11th Cir.1986). In this case, as noted by the district court, State Farm was required to demonstrate the absence of a genuine dispute as to any material fact. *Dixie Stevedores, Inc. v. Marinic Maritime, Ltd.*, 778 F.2d 670 (11th Cir.1985); *Mercantile Bank and Trust Co., Ltd. v. Fidelity and Deposit Co.*, 750 F.2d 838 (11th Cir.1985).

■ The district court, in relying exclusively upon the recent Georgia Supreme Court decision in *Halcome v. Cincinnati Insurance Co.*, 254 Ga. 742, 334 S.E.2d 155 (1985), stated:

Faced with the *Halcome* decision which holds that an insured breaches an insurance contract if he fails to provide *any* material information reasonably called for under the policy, and plaintiffs' inability to show some legitimate excuse for their failure to produce the tax returns, the Court has no choice but to grant defendant's motion for summary judgment. The information sought is relevant to plaintiffs' possible motive for arson. Plaintiffs inexcusably failed to comply with the conditions precedent of the policy before bringing suit. The policy was breached, making it void, and leaving no genuine issue of fact for a jury.

We disagree with the district court's determination that the information sought by State Farm in this case, i.e., the federal income tax returns, necessarily constituted "material information." We interpret *Halcome* as requiring an insured to provide any "material information" to the insurer that the insurer is entitled to receive under the insurance policy, and, absent an excusable failure to do so, constitutes a breach of the insurance contract. *Halcome*, 254 Ga. at 744, 334 S.E.2d 155.

In reaching this conclusion, we note several factors which indicate that the income tax returns did not constitute "material information." First, the homeowners executed an "Information Release" form prepared by, and at the request of, State Farm authorizing various institutions, individuals, and governmental agencies to release financial information and records. State Farm maintained possession of the "Information Release" form for approximately ninety days without attempting to obtain the requested federal income tax returns. Although State Farm argues that the release was insufficient to acquire federal income tax returns, State Farm cannot properly attack the adequacy of the release form because it prepared the form and presented it to the homeowners.

In addition, the homeowners, at the request of State Farm, appeared for an oral examination under oath and answered all questions relating to the claim, including information regarding their financial matters and other insurers of the property. Prior to the deposition, State Farm had requested that the homeowners bring with them documents "in their possession" relating to other insurers of the property and their federal income tax returns for the years 1980 through 1984. When the homeowners appeared for their depositions, they

informed State Farm that all copies of their income tax returns and other requested documents had been destroyed in the fire. No evidence indicates to the contrary.

State Farm has not indicated the policy provision which entitled it to require the homeowners to produce copies of their income tax returns. Additionally, although State Farm continued to request the tax returns, it never provided the homeowners with a form which it considered adequate to obtain copies of the income tax returns. During the course of this lawsuit State Farm obtained the income tax returns. At oral argument, State Farm admitted that the information in the income tax returns did not reveal any new information.

■ State Farm cites an Ohio appellate court decision, *Moore v. State Farm*, Nos. 9200 and 9376 (Court of Appeals of Montgomery County, Ohio, Dec. 3, 1985), holding that income tax returns are "per se relevant" in actions where the insurer raises the defense of arson as grounds for denying a claim. The district court erroneously held that the court in *Moore*, in reaching its decision, applied "legal principles very similar to those adopted in this State." We do not interpret *Halcome* or any other Georgia case as creating a "per se relevant" rule requiring that an insured produce income tax returns in cases where the insurer suspects fraud. In fact, the Georgia Supreme Court in *Halcome*, in responding to questions certified by this court and addressing the issue we now address, was presented with five specific subject areas to determine whether an insured's failure to provide any material information relating to any one of the enumerated subject areas would constitute a breach of the insurance contract.[3] The

Georgia Supreme Court, specifically declined to address the issue of whether an insured's failure to provide federal income tax returns would constitute a breach, and addressed only the first of the five enumerated topics holding that a refusal to provide information relating to an insured's income and sources of income would constitute a breach of the insurance contract. *Halcome*, 254 Ga. at 744, 334 S.E.2d 155.

■ An additional issue of material fact exists which should have prevented the trial court from entering summary judgment in favor of the defendant. The *Halcome* case, after stating that "if the Halcomes failed to provide *any* material information called for under § 12(d) of the policy, *supra*, they breached the insurance contract....", 254 Ga. 742, 744, 334 S.E.2d 155 (1985) (emphasis in the original), the court stated in the next paragraph: "... Thus, there is a breach of the contract *unless some principle excuses the failure* by the Halcomes to furnish the information...." *Id.* at 744, 334 S.E.2d 155 (emphasis added). Here, the Hineses had testified under oath, that the income tax returns had been destroyed in the fire, and that other material sought by State Farm had been likewise destroyed. It seems clear that they had thus raised the issue of whether "some principle" existed that excused their failure to furnish this information.

In this case, we find that the issue of whether the homeowners' federal income tax returns constituted "material information" and the issue of whether some principle "excused the failure" were factual issues genuinely disputed between the parties. Thus, these factual issues warranted resolution by a jury. Accordingly, we reverse the decision of the district court and

---

**3.** QUESTION FOR THE SUPREME COURT OF GEORGIA:

On the basis of the above facts, did the Halcomes breach their contract of insurance, thereby barring any recovery by the insured, by refusing to provide to The Cincinnati Insurance Company with information or documents about any of the following:

(1) Charles and Patricia Halcome's income and sources of income for the years 1971 through 1976 and 1978 through 1982.

(2) The Halcomes' bank accounts, savings accounts, and their accountants or bookkeepers.

(3) Whether or not Charles D. Halcome had ever been convicted of a crime.

(4) The Halcomes' federal tax returns and W–2 forms for the years 1978 through 1982.

(5) The Halcomes' federal income tax returns and W–2 forms for the five years preceding Charles Halcome's disability, 1971 through 1976.

*Halcome*, 254 Ga. at 744, 334 S.E.2d 155.

remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.