**James O. POWELL and Gwen G. Powell, Plaintiffs,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant.**

**Civ. A. No. 93–1624–A.**

United States District Court, E.D. Virginia, Alexandria Division.

May 4, 1994.

Michael Vincent Greenan, Warrenton, VA, for plaintiff.

Craig David Roswell, Niles, Barton & Wilmer, Baltimore, MD and Stephen Craig Conte, Richmond, VA, for defendants.

### *MEMORANDUM OPINION*

HILTON, District Judge.

This case came before the Court on defendant's Motion for Summary Judgment and plaintiffs' Motion to Certify Question to the Virginia Supreme Court.

Plaintiffs are the holders of homeowners insurance provided by United States Fidelity

& Guaranty Company ("USF & G") pursuant to policy number HOM–30411854–01 ("the contract"). On September 7, 1992, the plaintiffs' Remington, Virginia home and the contents therein were destroyed by fire. The next day Earl Gould, the supervisor of USF & G's special investigation unit, was alerted by William Seals of the Bureau of Alcohol, Tobacco and Firearms that the fire was incendiary, or intentionally set.

On November 17, 1992, an attorney for USF & G contacted the plaintiffs and requested that the plaintiffs undergo an examination under oath and produce certain documents on December 3, 1992. USF & G made the request pursuant to a clause of the policy which provides for such examinations. The clause mirrors Virginia Code § 38.2–2105, which is titled "Standard provisions, conditions, stipulations and agreements for [fire insurance] policies". Upon request of Mrs. Powell, the examination was rescheduled for December 7, 1992.

By letter dated December 3, 1992, plaintiffs' counsel informed USF & G that the Powells had revoked any authorization they had granted USF & G to look into their finances. USF & G replied through counsel by letter dated December 11, 1992. Noting that it interpreted § 38.2–2105 as having no "scope limitation to examinations under oath," USF & G scheduled an examination under oath for the plaintiffs for December 21, 1992.

On December 14, 1992, USF & G informed the Powells that the failure to provide business and financial records, as well as tax records about the husband's employment for three years past and their refusal to answer questions thereon were a material breach of contract.

On December 18, 1992, plaintiffs filed a Motion for a Declaratory Judgment in the Circuit Court for Fauquier County. Plaintiffs did not attend the examination scheduled for December 21st, 1992. On March 9, 1993, Judge William Shore Robertson of the Circuit Court for Fauquier County entered an Order staying all discovery "until the plaintiffs have submitted to statements under oath as required by Section 38.2–2105 of the Code of Virginia, 1950, as amended, and as is further required by the applicable provisions of the insurance policy issued by United States Fidelity and Guaranty Company."

On April 7, 1993, the Powells submitted to a statement under oath. Mr. Powell objected to questions concerning his employment and some of his debts, but did state the amount of his monthly mortgage payment and that he was "a couple" of months behind on his mortgage. He also refused to answer questions regarding, among other things, whether he had mortgages on other real estate, the type of automobiles he owned and the debts thereon, whether there were any judgments against him or Powell Drywall, whether he had income from Powell Drywall during 1992, whether he had documents reflecting the accounts payable to Powell Drywall, whether he had documents reflecting the liabilities of Powell Drywall, whether he had financial statements for Powell Drywall for the Years 1989–1992, whether he had any other source of income other than as a subcontractor, whether he had any other insurance claims in the last ten years, whether, in September of 1992 he had loaned money to anyone and not been reimbursed, whether he had a retirement plan, and whether he had had a downturn in his business recently creating financial difficulties for him. Indeed, when asked whether he owed money to anyone on the date of the fire, plaintiff's counsel responded that "[t]hat's not relevant for this unless you can find some way to make it relevant." In her examination, Mrs. Powell also objected to questions regarding the Powells' prior fire losses and financial condition.

After the examinations were completed, USF & G continued its attempt to obtain the requested information from the Powells. On May 11, 1993, the parties appeared before Judge Robertson, who continued the stay of discovery in the state court action and instructed counsel to obtain a hearing date for oral argument as to whether the plaintiffs had complied with the statute and the policy. That hearing never took place. Plaintiffs chose instead to request an order of non-suit, and that order was entered on June 22, 1993.

Plaintiffs filed this action on December 22, 1993, seeking a declaratory judgment that defendants failed to provide insurance coverage in violation of the contract, compensatory and punitive damages, and attorney's fees and costs. Defendants moved for summary judgment on March 25, 1994. Plaintiffs, in their opposition, moved this Court to certify the issue of the scope of examinations pursuant to § 38.2–2105 to the Supreme Court of Virginia.

■ Grants of summary judgment motions are warranted if the pleadings, answers to interrogatories, admissions and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law determines materiality. That is, only those facts that might be outcome-determinative under the current law are material. A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Virginia Code § 38.2–2105, part of the Virginia Standard Insurance Policy language, states in relevant part,

The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made. No suit or action on this policy for recovery of any claim shall be sustainable in any court of law or equity unless all of the requirements of this policy shall have been complied with, and unless commenced within two years next after inception of the loss.

The plaintiffs' policy carried the mandatory language as follows:

**Number 2—Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

f. As often as we reasonably require:

(1) show the damaged property;

(2) provide us with records and documents we request and permit us to make copies and

(3) submit to questions under oath and sign and swear to them.

The scope of examinations allowed pursuant to § 38.2–2105 is an issue that has not been decided in Virginia. However, federal and state courts considering the scope of such examinations under similar statutory regimes and under similar factual scenarios have concluded that the financial condition of the claimant is a proper subject of post-loss examination by insurance companies. *Pisa v. Underwriters at Lloyd's, London*, 787 F.Supp. 283 (D.R.I.), *aff'd*, 966 F.2d 1440 (1st Cir.1992); *Templin v. Grange Mut. Casualty Co.*, 81 Ohio App.3d 572, 611 N.E.2d 944 (1992); *United States Fidelity and Guar. Co. v. Conaway*, 674 F.Supp. 1270 (D.Miss.1987), *aff'd*, 849 F.2d 1469 (5th Cir.1988); *Stover v. Aetna Casualty and Surety Co*, 658 F.Supp. 156 (S.D.W.Va.1987); *Kisting v. Westchester Fire Ins. Co.*, 290 F.Supp. 141 (W.D.Wisc.1968), *aff'd*, 416 F.2d 967 (7th Cir. 1969); *Lee v. United Fire & Casualty Co.*, 607 So.2d 685 (La.Ct.App.1992); *Dlugosz v. Exchange Mut. Ins. Co.*, 176 A.D.2d 1011, 574 N.Y.S.2d 864 (N.Y.App.Div.1991); *Allison v. State Farm Fire & Casualty Co.*, 543 So.2d 661 (Miss.1989). *But See Hines v. State Farm Fire & Casualty Co.*, 815 F.2d 648, 652 (11th Cir.1987) (finding that Georgia has not established "a 'per se relevant' rule requiring that an insured produce income tax returns in cases where the insurer suspects fraud").

Plaintiff claims that the purpose of the insurance provision at hand is to prove property loss to the insurance company, and any questions regarding the plaintiffs' financial condition were irrelevant to the "circum-

stances of the fire or the damages from the fire."

While plaintiffs are undoubtedly correct that requiring claimants to prove loss is one of the intents behind § 38.2–2105, it is clear that one of the purposes for requiring examinations under oath and the production of documents is to protect the insurance company against false claims. *Pisa*, 787 F.Supp. at 285; *Allison*, 543 So.2d at 664; *Templin*, 611 N.E.2d at 947. (cited with approval in *Stover*, 658 F.Supp. at 160 n. 6.).

It is also immediately clear to this court that questions about the plaintiffs' financial situation are relevant to the insurance company's investigation of the fire. *Stover*, 658 F.Supp. at 160 ("that a stressed financial condition may provide the motive for arson is well recognized"); *Chavis v. State Farm Fire and Casualty Co.*, 317 N.C. 683, 346 S.E.2d 496, 498 (1986) ("[t]he financial condition of the insured is a relevant matter of inquiry to an insurer suspecting arson.").

Plaintiff argues that it is implausible that while the Virginia Legislature "cannot constitutionally make a law requiring the Powells to incriminate themselves as suspects of arson, yet they can provide a law which allows any person ... to demand such incriminating testimony."

■ Contrary to plaintiffs' contention, the privilege against self incrimination does not protect them from having to disclose financial information. In *Kisting v. Westchester Fire Ins. Co.*, 290 F.Supp. 141 (W.D.Wis. 1968), the plaintiffs sought to recover proceeds for a fire loss under a policy similar to the one at hand. As an affirmative defense, the insurance company claimed arson. During the policy-mandated examination under oath, plaintiffs refused to answer questions about, among other things, the damage caused by the fire, his income from Anchor Sales Company, the amount of his bank deposits on a certain day and certain tax information. While the plaintiffs contended that they were protected from disclosure of this information by the privilege against self incrimination, the court rejected the claim, characterizing it as an impermissible attempt to "utilize the privilege not only as a shield, but also as a sword".

The Supreme Court of Virginia in *Davis v. Davis*, 233 Va. 452, 357 S.E.2d 495 (1987) explained that the sword and shield doctrine,

> provides that a moving party cannot use [the privilege against self-incrimination] as a sword to sabotage any attempt by the other party, either during pretrial discovery or at trial, to obtain information relevant to the cause of action alleged, and relevant to possible defenses to the claim.

Of course, there is a point at which some amount of compliance will allow claimants to avoid summary disposition. *Templin*, 611 N.E.2d 944, 947–48. It also goes without saying that when there is a genuine issue of material fact concerning a claimant's compliance with the policy, summary judgment in favor of the insurance company should be denied. *Wood v. Allstate Ins. Co.*, 21 F.3d 741 (7th Cir.1994).

■ When sitting in diversity and considering an issue of Virginia law, this Court must determine how the Virginia courts would rule on the same issue. *Brendle v. General Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir.1974); 19 Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* § 4507, pp. 88–89 (1982). If the Supreme Court of Virginia were to consider this issue, this Court is persuaded that it would find that the requested material is reasonable under the meaning of Virginia Code § 38.2–2105. The weight of authority as decided in both state and federal courts is to allow for full disclosure within reasonable bounds, and that the financial condition of the claimants is material when the insurance company suspects fraud. While the plaintiffs in this case did not refuse to answer every question about their finances, they did refuse, on the basis of materiality, to provide a substantial amount of requested information which related to their financial condition at the time of the fire and was relevant to this case. Thus, there can be no doubt that the plaintiffs failed to cooperate as required by the policy.

Because the material facts are not in dispute, and because defendants are entitled to

judgment as a matter of law, defendant's Motion for Summary Judgment is well taken.

An appropriate Order shall issue.

## ORDER

This case came before the Court on defendant's Motion for Summary Judgment and plaintiffs' Motion to Certify Question to the Virginia Supreme Court, and for reasons stated in the accompanying Memorandum Opinion, it is hereby

ORDERED that defendant's Motion is GRANTED and the plaintiffs' Motion is DENIED, and this case is DISMISSED.