PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

JAMES O. POWELL; GWEN J. POWELL,
Plaintiffs-Appellants,

v.

No. 94-1595

UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-93-1624-A)

Argued: January 30, 1995

Decided: July 2, 1996

Before POWELL,* Associate Justice (Retired), United States
Supreme Court, sitting by designation, and WIDENER and
WILLIAMS, Circuit Judges.

_____

Affirmed by published per curiam opinion.

_____

COUNSEL

ARGUED: Michael Vincent Greenan, MICHAEL V. GREENAN,
_____
*Justice Powell was a member of the panel which heard the case at
oral argument but did not thereafter participate in the decision. The deci-
sion is filed by a quorum of the panel. 28 U.S.C. § 46(d).

P.C., Warrenton, Virginia, for Appellants. Craig David Roswell, NILES, BARTON & WILMER, Baltimore, Maryland, for Appellee.

_____

**OPINION**

PER CURIAM:

Appellants James and Gwendolyn Powell appeal from the district court's dismissal of Count Two of their complaint, its refusal to certify an issue of law to the Virginia Supreme Court, and its grant of summary judgment to Appellee United States Fidelity & Guaranty Company (USF&G) on Count One of the Powells' complaint. This diversity action was brought by the Powells in December 1993 seeking, in Count One, a declaratory judgment that an examination-under-oath clause in the Powells' homeowners' insurance policy with USF&G is limited in scope to investigation of the extent of a claimed loss and does not include examination as to the causes or origins of such loss. In addition, the Powells claimed in Count Two that USF&G acted in bad faith and sought consequent compensatory and punitive damages. We affirm the district court's judgment in all respects.

The facts of this case are essentially undisputed. On September 7, 1992, the Powell's house was destroyed by fire. USF&G, the Powells' homeowners' insurance carrier, was notified on September 8, 1992 by an agent of the United States Bureau of Alcohol, Tobacco, and Firearms of the incendiary nature of the fire. USF&G began an investigation into the causes of the fire, including a request that the Powells submit to an examination under oath as authorized by the Powells' insurance policy. The Powells acquired counsel and sought a declaratory judgment in the Circuit Court of Fauquier County seeking to limit the scope of USF&G's examination of the Powells, and the Circuit Court stayed the action pending examination of the Powells under oath by USF&G. The Powells submitted to the examination but refused to answer a number of questions or to turn over financial and other documents requested by USF&G. The Circuit Court scheduled a hearing to determine whether the Powells had complied with the examination-under-oath provision, but the Powells nonsuited the Virginia action and filed the instant action in the district court.

2

USF&G moved to dismiss the punitive damages element of Count Two of the Powells' complaint, the bad-faith claim, as unavailable under Virginia law, and the district court after a hearing dismissed Count Two in its entirety. USF&G then moved for summary judgment on Count One, and the district court by Memorandum Opinion granted that motion and refused to certify the issue of the scope of the examination-under-oath clause to the Virginia Supreme Court as requested by the Powells. See Powell v. United States Fidelity & Guaranty Co., 855 F. Supp. 858 (E.D. Va. 1994). This appeal followed.

In essence, the Powells argue that the examination-under-oath clause of their homeowners' policy is not intended to permit USF&G to delve into financial or other information relating to the Powells' possible motives to intentionally set the fire which destroyed their property, but is instead limited by its terms to an examination relating to the existence and extent of loss under the policy. The Powells' homeowners' policy provides:

> Number 2--Your Duties After Loss. In case of a loss to covered property, you must see that the following are done:
>
> . . . .
>
> f. As often as we reasonably require:
>
> . . . .
>
> (2) provide us with records and documents we request and permit us to make copies; and
>
> (3) submit to questions under oath and sign and swear to them.

E.g., Powell, 855 F. Supp. at 860. Under Virginia law, an insurer must include in its policy all standard fire-insurance-policy provisions provided for in the Virginia Code, see Va. Code Ann.§ 38.2-2105, or any deviation therefrom that is "in no respect less favorable to the insured than the standard policy form and is . . . approved by the

3

Commission prior to issuance." Va. Code Ann.§ 38.2-2107.**1** The Virginia Standard Insurance Policy form reads in relevant part as follows:

> Standard provisions, conditions, stipulations, and agreements for [fire insurance] policies.--Except as provided in § 38.2-2107, each policy shall contain the following provisions, conditions, stipulations, and agreements:

. . . .

> Requirements in case loss occurs. . . . . The insured, as often as may be reasonably required, shall . . . submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers . . . and shall permit extracts and copies thereof to be made.

. . . .

> Suit. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within two years next after inception of the loss.

Va. Code Ann. § 38.2-2105.

The Virginia courts have not addressed the scope of the examination permitted under the language in Section 38.2-2105, but numerous other courts have done so with respect to statutory language identical

_____

**1** The Powells do not argue on this appeal that the examination-under-oath provision in their insurance contract is less favorable than the Standard Insurance Policy language or that the Insurance Commission did not approve the policy language.

to the Virginia Standard Insurance Policy, and all coming to our attention have held that the examination-under-oath clause encompasses investigation into possible motives for suspected fraud. See, e.g., Pisa v. Underwriters at Lloyd's, London, 787 F. Supp. 283, 285-86 (D.R.I.), aff'd, 966 F.2d 1440 (1st Cir. 1992) (table); Kisting v. Westchester Fire Ins. Co., 290 F. Supp. 141, 145-48 (W.D. Wis. 1968), aff'd, 416 F.2d 967 (7th Cir. 1969); see also Powell, 855 F. Supp. at 860 (citing Pisa, Kisting, and numerous other cases construing the scope of examination-under-oath provisions);2 5A John A. Appleman & Jean Appleman, Insurance Law & Practice§ 3552, at 561 ("Examination [under oath] is not restricted to amount of loss, but the insurer has the right to examine the insured and his witnesses as to any matter material to the insurer's liability and the extent thereof.").

In the light of the fact that the Powells initially filed suit in a state court but took a nonsuit, and the clear state of the law in every other jurisdiction that has addressed the issue, we see no need to certify this question to the Supreme Court of Virginia.**3** Any argument of the

_____

**2** In Hines v. State Farm Fire & Casualty Co., 815 F.2d 648 (11th Cir. 1987), on similar facts, the Eleventh Circuit reversed and remanded a summary judgment in favor of the defendant insurance company on a diversity suit for recovery by the insured under Georgia law. The Georgia Supreme Court had limited the scope of examination under oath to "`material information reasonably called for under the policy,'" Hines, 815 F.2d at 651 (citing Halcome v. Cincinnati Ins. Co., 334 S.E.2d 155 (Ga. 1985)), and the Eleventh Circuit disagreed with the district court's conclusion that an insured's tax returns were "per se relevant" in Georgia, see Hines, 815 F.2d at 652. However, the Hines court dealt only with the question of whether failure to submit income tax returns on request would constitute breach of the insurance contract. It explicitly noted that the Georgia Supreme Court has held, in Halcome , that "a refusal to provide information relating to an insured's income and sources of income would constitute a breach of the contract." See Hines, 815 F.2d at 652.

In the instant case, the Powells refused to provide certain information, including tax returns as well as income and income-source information, on the ground that it is outside the scope of the clause. It is clear to us that the Hines opinion is in agreement with every other court that has addressed the issue, and with our decision today, that the examination-under-oath clause is broad enough to encompass such information.
**3** We note that the Powells brought this action originally in a Virginia state court and voluntarily nonsuited it. In National Bank of Washington

5

Powells, that giving the provision such a broad scope would effectively abnegate their right against self-incrimination, is unavailing; they may avoid incriminating themselves by refusing to submit to relevant requests made by USF&G under the policy provision, although to do so may ultimately cost them insurance coverage under the terms of the contract for which they and USF&G bargained. We agree with the district court that the Virginia courts would read the examination-under-oath language of Section 38.2-2105 broadly enough to encompass financial motivations for suspected fraudulent conduct, given the overwhelming force of authority from other jurisdictions regarding the construction of the precise language at issue in this case, and we therefore affirm the grant of summary judgment to USF&G on the reasoning of the district court.

Because we agree with the district court that summary judgment in favor of USF&G was appropriate and that certification to the Virginia Supreme Court was not, we necessarily affirm the district court's dismissal of Count Two, the Powells' bad-faith claim.

The judgment of the district court is accordingly

AFFIRMED.*

_____

v. Pearson, 863 F.2d 322, 326-27 (4th Cir. 1988), this court declined to certify a question to the Maryland Court of Appeals, despite a lack of Maryland precedent on the issue, for, among other reasons, "[c]ertification would be inappropriate . . . because Pearson himself removed this case from Maryland state court after the Maryland judge decided the question against him. If Pearson had wanted the Maryland Court of Appeals to rule on the matter, he should not have removed the action to the federal court." We are of opinion that, apart from the different substantive laws at issue, Pearson is persuasive.

*The motion of appellants to re-argue the case is moot and is dismissed for that reason.

6