William SNYDER, et ux., Plaintiffs,

v.

CHESTER COUNTY MUTUAL
INSURANCE CO., et al.,
Defendants.

No. CIV.A. WDQ–02–415.

United States District Court,
D. Maryland,
Northern Division.

May 22, 2003.

---

Robert M Schwartzman, Lord and Whip PA, Baltimore, Ronald Marc Levin, ORourke and Cundra, Washington, DC, for William Snyder, Mary Lou Snyder, Plaintiffs.

George E Reede, Jr, Niles Barton and Wilmer LLP, Lucinda E. Davis, Niles Barton and Wilmer LLP, Baltimore, for Chester County Mutual Insurance Co., Cumberland Insurance Company, Defendants.

## MEMORANDUM OPINION

QUARLES, District Judge.

In this diversity case, William and Mary Lou Snyder ("the Snyders") of Maryland have sued Chester County Mutual Insurance Company of Pennsylvania and Cumberland Insurance Company of New Jersey (collectively "Cumberland") for breach of contract, bad faith, tortious breach of contract, and constructive fraud arising from the denial of their homeowner's insurance claim. Cumberland has moved for summary judgment. With respect to the breach of contract claim, Cumberland argues that the Snyders materially breached their contract by failing to provide requested documents. Cumberland argues that the remaining claims are not recognized under Maryland law. For the following reasons, the motion will be denied as to the breach of contract claim and granted as to the remaining claims.

## BACKGROUND

The Snyders purchased homeowner's insurance from Cumberland, which covered theft losses. Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Memorandum") at 2; Memorandum in Support of Opposition to Motion for Summary Judgment ("Opposition") at 3.[1] On April 8, 2001, the Snyders' home was burglarized while they were on vacation. Opposition at 3. After the theft, the Snyders compiled a "quick list" of missing items that could be quickly resold; the list totaled $15,206.88. Opposition at 4; Plaintiffs Exhibit ("P.E.") B, at 39.

In late April 2001, Mrs. Snyder received notice that premium payments were late. P.E. B, at 58–59. A Cumberland representative assured her the policy would not be canceled if the payment was promptly submitted. Id. In early May, Cumberland canceled the policy for nonpayment. Id. After receiving the cancellation, Mrs. Snyder called Cumberland and spoke to Vice President of Claims Frank Hoover and others who told her the policy would remain canceled. Id. at 59–60. After Mrs. Snyder threatened to call the Maryland

---

1. Although it did not move for summary judgment on that basis, Cumberland asserts in a footnote that it is not liable to the Snyders under the insurance policy, which only names Chester County Mutual. Memorandum at 2, footnote 2; Defendant's Exhibit ("D.E.") 1. Chester County Mutual merged into Cumberland Insurance Group on October 1, 2000, and no longer exists. P.E. G, page 4–5. When two entities merge, the surviving entity assumes the other's liabilities. *Baltimore Luggage Co. v. Holtzman,* 80 Md.App. 282, 290, 562 A.2d 1286 (1989), *cert. denied* 318 Md. 323, 568 A.2d 28 (1990). When Cumberland denied the Snyders' claim it acknowledged: "Cumberland Mutual Insurance Company formerly the Chester County Mutual Insurance company is denying any liability to you ..." D.E. 5.

Insurance Commissioner, the Vice President of Underwriting told her the policy would be reinstated without any lapse in coverage. *Id.* at 61.

On July 31, 2001, the Snyders submitted an inventory that claimed a loss of $95,820.05. P.E.F, at 53; Opposition at 5, P.E. J, at 1.[2] Although receipts were submitted, Mr. Scott Johnson testified, the claims adjuster, testified a "good portion" of the claim's collaboration consisted of photocopies of catalog pages. P.E.F, at 73–74.

In early August, Mrs. Snyder called Mr. Hoover about the claim. P.E. B, at 62. He cordially indicated he would have some questions about the claim. P.E. B, at 62. After a few weeks, Mrs. Snyder called him again. *Id.* She testified he was "nasty" during this second conversation in which he indicated that the claim was "voluminous" and had been referred to George Reede, Esquire, Cumberland's attorney. *Id.* at 63. Mrs. Snyder told him that his suspicions made her feel "like a rape victim." *Id.* at 64. After that call, Mrs. Snyder left an "irate" message on Mr. Reede's answering machine. *Id.* at 66. When Reede called her, she restated the "rape victim" analogy. *Id.* at 66.

Mrs. Snyder also called Captain of Detectives Bob Irwin and told him Mr. Hoover had accused her of burglarizing her home. *Id.* at 67. Finally, she called insurance adjuster Scott Johnson, and told him that Mr. Hoover had "lied to her" and had accused her of burglary. *Id.* at 70.

Mrs. Snyder testified that then Mr. Hoover called her, "yelling," and said: "Who do you think you are? You tell me— you have told people I'm a liar. You said that I accused you of this burglary, I've never accused you of this burglary. I'm no liar." *Id.* at 70. The tone of the conversation softened however and Mr. Hoover was "very personable" at its conclusion. *Id.* at 71.

On September 6, 2001, the Snyders met with Mr. Hoover and Mr. Johnson to discuss their claim. Opposition at 7. Mrs. Snyder indicated Mr. Hoover was sarcastic at times during the meeting and told the Snyders that if he had his attorney review the inventory it would be "20 times worse." P.E. B, at 77, 78–79. During this meeting, Mr. Snyder told him he had considered filing bankruptcy in 1999. Opposition at 7, P.E. C, at 69–70.

On September 28, 2001, Cumberland requested certain financial documents. Opposition at 7–8; Defendant's Exhibit ("D.E.") 5, at 1.[3] In the request, Cumberland conceded that the theft had occurred, but questioned whether the Snyders had inflated their claim. D.E. 5, at 1. The Snyders never produced the requested documents. P.E. C, at 23.

On January 4, 2002, the Snyders sued Cumberland for anticipatory breach of contract and torts arising from that breach. On January 30, 2002, Cumberland notified the Snyders that it was denying their claim for failure to produce the requested documents. Opposition at 8; D.E. 5, at 9–10.[4] On February 8, 2002, Cum-

---

**2.** Cumberland contends the claim was closer to $103,000. Memorandum at 2; P.E. G, page 46.

**3.** Cumberland requested: (1) Individual Income Tax Returns for 1999–2000, with attached schedules; (2) bank account statements from January 1, 1999 through April 30, 2001; (3) checking account registers from January 1, 1999 though the date of the theft;

(4) canceled checks from January 1, 2000 through April 30, 2001; and (5) the Snyder's "petition for bankruptcy, the filing of which you have indicated is imminent." D.E. 5, at 1–2.

**4.** Cumberland has proceeded on the basis that the claim is for breach of contract. Opposition at 20; Memorandum at 11; Defendant's Reply Memorandum at 6 ("Here Plain-

berland removed the case from the Circuit Court for Baltimore City pursuant to 28 U.S.C. § 1332.

On February 26, 2002, Cumberland filed a Motion for Summary Judgment; it was denied as premature on August 12, 2002.

On January 17, 2003, Cumberland filed the instant motion for summary judgment. The Snyders opposed this motion on February 4, 2003. After Chester County and Cumberland replied on February 13, 2003, the Snyders requested leave to file a surreply.

### Discussion

As a preliminary matter, the Court will grant the Snyders' unopposed request to file a surreply. Local Rule 105.2 (D.Md.). The issues have been fully briefed by the parties, and no hearing is necessary. Local Rule 105.6 (D.Md.).

### I. Summary Judgment Standard

Summary judgment may be granted when the moving party shows that there is no genuine issue of material fact, and it is legally entitled to judgment. *See Kitchen v. Upshaw*, 286 F.3d 179, 182 (4th Cir. 2002), *citing* Fed.R.Civ.P. 56(c). The moving party's initial burden depends on whether it would bear the burden of proof at trial. If it would not, its initial burden is met by "pointing out" that the non-moving party has not made a sufficient showing on an essential element of its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party would bear the burden of proof at trial, it satisfies its initial burden by producing

evidence upon which a reasonable jury could return a favorable verdict. *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 614 n. 10 (4th Cir.1999).

After the initial showing, summary judgment will be granted unless the opponent produces evidence upon which a reasonable jury could return a verdict in its favor. *Celotex*, 477 U.S. at 323–25, 106 S.Ct. 2548, *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir.2002), *citing Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.[5]

### II. Breach of Contract

This contract dispute is governed by Maryland law. *See Roe v. Doe*, 28 F.3d 404, 407 (4th Cir.1994) (law of forum state controls diversity cases).

Cumberland argues it is entitled to summary judgment because the Snyders' failure to produce the requested financial documents materially breached the insurance contract and relieved it of its payment obligation. Memorandum at 5–6. It relies on the contract's cooperation clause that requires the policy holder to "[p]rovide [the insurer] with records and documents [the insurer] request[s] . . . ." D.E. 6.

The Snyders argue that they either substantially complied, or completely complied, with the cooperation clause because the information request was unreasonable. Opposition at page 13. They also assert

---

tiffs have alleged nothing more than a breach of an insurance contract . . .").

**5.** The opponent's burden cannot be met with conclusory or speculative allegations, or a "mere scintilla" of evidence. *See Thompson*, 312 F.3d at 649, *citing Phillips v. CSX*

*Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999). However, all justifiable inferences will be drawn in favor of the non-moving party. *Phillips*, 190 F.3d at 287–88, *citing Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

that Cumberland cannot discharge its contractual obligations because of the omission unless it demonstrates actual prejudice. *Id.* at 14.

### A. Reasonableness of the Information Request

#### 1. Substantial Compliance Standard

■ Insurance companies frequently assert noncompliance with contractual duties as grounds to disclaim liability. *See Allstate Insurance Company v. State Farm Mutual Automobile Insurance Company, et al.,* 363 Md. 106, 118–19, 767 A.2d 831 (2001). Provisions requiring the submission of information upon request are categorized as cooperation clauses. *Id.* at 121, 767 A.2d 831. A cooperation clause may be either an express condition or a covenant. *Hartford Fire Insurance Company v. Himelfarb,* 355 Md. 671, 680, 736 A.2d 295 (1999). Strict compliance with an express condition is required to maintain the insurer's payment obligation. *Id.* at 681, 736 A.2d 295. Mere substantial compliance with a covenant is sufficient. *Id.*

■ Cumberland's cooperation clause is a covenant because the disclosure obligation is not stated as an express condition precedent and forfeiture is not stated as a consequence of noncompliance. *Compare* D.E. 6 *with Himelfarb,* 355 Md. at 679–81, 736 A.2d 295. Therefore, if the Snyders substantially complied with the cooperation clause, Cumberland's payment obligation is not extinguished. *Himelfarb,* 355 Md. at 681, 736 A.2d 295.[6]

■ Substantial compliance exists when the insured: (1) supplies *reasonably requested* information to a reasonable extent; and (2) undertakes to submit the balance when it is reasonably possible. *Himelfarb,* 355 Md. at 690–91, 736 A.2d 295 [emphasis added].[7] The Snyders did not provide Cumberland with the information it requested. P.E. B, at 11 (Mrs. Snyder's testimony); P.E. C, at 22–23 (Mr. Snyder's testimony). Although Mrs. Snyder testified that she did not keep records such as bank statements, tax returns, and bills, there is no evidence that she could not have— through reasonable efforts— obtained duplicates. *Id.* at 11, 13, 14, 18, 28–31.[8] In fact, when asked what happened to the checking account registers, Mrs. Snyder testified that after the burglary she "shredded a lot of stuff because everything was so out of order that we didn't

6. In *Himelfarb,* the Maryland Court of Appeals noted that construing a contract term as covenant, rather than as an express condition precedent, is preferred because forfeiture is disfavored. *Himelfarb,* 355 Md. at 679–81, 736 A.2d 295.

7. This standard was announced in *Himelfarb,* a case involving the failure to submit a proper sworn proof of loss. *Id.* at 673, 736 A.2d 295. Proofs of loss allow the insurer "to ascertain the nature, extent, and character" of the claim. *GEICO v. Harvey,* 278 Md. 548, 553, 366 A.2d 13 (1976), *citing Empire State Ins. Co. v. Guerriero,* 193 Md. 506, 69 A.2d 259 (1949). The proof of loss allows the insurer to plan its course of action, "ranging from full settlement to absolute repudiation of liability." *Id.citing Fire Ins. Co. v. Merrick,* 171 Md.

476, 489, 190 A. 335 (1937) (property loss case involving failure to provide proof of loss amidst fraud allegations).

*Himelfarb* recognized that proof of loss and cooperation clause jurisprudence is related and cited a cooperation clause breach in a proof of loss dispute. *Himelfarb,* 355 Md. at 689, 736 A.2d 295, *quoting Mutual Fire Insurance Co. v. Pickett,* 117 Md. 638, 643–44, 83 A. 1097 (1912). *Mutual Fire Insurance Co. v. Pickett* recognized that cooperation clauses provide the means to verify the information in proof of loss claims. *Id.*

8. Mr. Johnson testified that one may obtain duplicate credit card bills and either duplicate canceled checks or bank statements by requesting them. P.E. F, at 82.

bother." P.E. B, at 16–17. If Cumberland's request was reasonable, the Snyders have not substantially complied with the cooperation clause. *See Himelfarb,* 355 Md. at 690–91, 736 A.2d 295.

■ The Snyders argue that the information request was unreasonable because Cumberland's suspicion of fraud was unreasonable. *See* Opposition at 7–8, 11, 18. Financial documents are relevant and reasonably requested when an insurer suspects fraud. *See Powell v. United States Fidelity & Guaranty Co.,* 855 F.Supp. 858, 860 (E.D.Va.1994), *aff'd,* 88 F.3d 271 (4th Cir.1996), *and cases cited therein.* The insured's failure to provide such information has been a basis for summary judgment for the insurer because no jury could reasonably find substantial compliance with the policy. *See Powell,* 855 F.Supp. at 861–62.

■ Requests for documents have been held reasonable in circumstances in which fraud was uncertain. *See Templin v. Grange Mut. Casualty Co.,* 81 Ohio App.3d 572, 574, 577, 611 N.E.2d 944 (1992) (when insurer's investigation indicating arson conflicted with fire and police department investigation indicating faulty wiring, financial information of insured was material). Document requests are reasonable if there is a mere "possibility" of fraud. *See Wood v. Allstate Ins. Co.,* 21 F.3d 741, 747 (7th Cir.1994), *citing Stover v. Aetna Casualty & Surety Co.,* 658 F.Supp. 156, 160 (S.D.W.Va.1987); *accord Tran v. State Farm Fire & Cas. Co.,* 136 Wash.2d 214, 961 P.2d 358, 364 (1998); *Happy Hank Auction Co. v. American Eagle Fire Insurance Company, et al.,* 286 A.D. 505, 509, 145 N.Y.S.2d 206 (N.Y.App.Div.1955).

■ In Maryland, insurers must investigate claims in good faith. *Port East Transfer, Inc. et al. v. Liberty Mutual Ins. Co.,* 330 Md. 376, 386, 624 A.2d 520 (1993);

*see also Berkshire Life Ins. Co. v. Maryland Insurance Administration, et al.,* 142 Md.App. 628, 660, 791 A.2d 942 (2002). To request financial documents, an insurer need only believe in good faith that there is a possibility of fraud. *See Id.; Wood,* 21 F.3d 747.

■ Cumberland's theory of fraud is that the Snyders inflated their otherwise legitimate claim. Memorandum at 3. Mr. Hoover had the ultimate authority to pay or deny the Snyders' claim. P.E. G, page 11. He testified that he suspected fraud because: (1) the Snyders increased the claim amount from $15,000 to $103,000; (2) the final claim amount was very close to the policy limit; (3) the highest theft loss he had seen before the Snyders' claim was from $30,000 to $40,000; (4) the police told him they did not tell the Snyders to compile the $15,000 quick list; (5) the Snyders mentioned bankruptcy; and (6) Mrs. Snyder indicated she often gambled. P.E. G, at 46, 48, 59–60, 62. The insurance adjuster indicated that a "good portion" of the Snyders' supporting documentation consisted of "photocopies of catalog pages and things like that." P.E. F, at 74. This evidence supports a good faith belief in the possibility of fraud.

■ At trial, the Snyders would bear the burden of establishing that Mr. Hoover's bad faith excused their noncompliance with the cooperation clause. *See Port East Transfer, Inc.,* 330 Md. at 386, 624 A.2d 520. The Snyders argue, without more, that Cumberland could not have reasonably suspected them of burglarizing their home. Opposition at 9–10. The Snyders have not produced evidence upon which a reasonable jury could find that Cumberland acted in bad faith.

There is no indication that Mr. Hoover ignored information that substantiated the Snyders' claim. Although the Snyders

have produced evidence that Mr. Hoover became angry with them on occasion, that anger does not vitiate the evidence of possible fraud.[9] Therefore, the Snyders have not produced evidence indicating a bad faith belief in the possibility of fraud.

### 2. Actual Compliance with the Contract

The Snyders argue that the contract itself imposed an additional requirement that Cumberland's information requests be reasonable. Opposition at 15. The Snyders have not argued that this reasonableness requirement is more stringent than that already imposed by Maryland law. Therefore, the Snyders have not shown that Cumberland's requests were unreasonable under the contract language.

### B. Actual Prejudice in Property Loss Claims

### 1. Common Law and Statutory History

In 1963, the Maryland Court of Appeals held that an insurer could disclaim coverage based on an insured's failure to comply with a notice provision without showing prejudice. *Watson v. U.S.F. & G.*, 231 Md. 266, 272, 189 A.2d 625 (1963).[10]

In 1964, the Maryland General Assembly responded by enacting what is now MD. CODE ANN., INS. § 19–110 (2002). *Allstate Ins. Co.*, 363 Md. at 122, 767 A.2d 831. The statute required insurers to prove prejudice by a preponderance of the evidence before disclaiming coverage based on the breach of a liability policy's notice or cooperation clause. *Id.; see also* MD. CODE ANN., INS. § 19–110 (2002).

### 2. Application of the Prejudice Standard to Property Loss Claims

Section 19–110 permits an insurer to disclaim coverage on a "liability policy" by demonstrating prejudice. MD. CODE ANN., INS. § 19–110 (2002). The Snyders' reliance on § 19–110, however, is misplaced because § 19–110 does not apply to property loss policies. *Id.*

■ By contrast, MD. CODE ANN., INS. § 19–111 (2002) ("Limitation on preventing recovery for property loss") is triggered by the insured's failure to provide the required notice or proof of loss. *See Himelfarb*, 355 Md. at 685, 736 A.2d 295. The insurer may disclaim coverage without demonstrating prejudice. *Id.*

■ However, § 19–111 does not permit insurers to disclaim coverage for noncompliance with a cooperation clause. MD. CODE ANN., INS. § 19–111 (2002). The Snyders are correct in contending that a showing of actual prejudice is required for Cumberland to avoid its payment obligation. Surreply at 7.

■ In 1960, the Maryland Court of Appeals imposed a heavy burden on insurers seeking to avoid payment because of an insured's lack of cooperation: "to relieve an insurer of liability on the ground of a lack of co-operation, discrepancies in statements made by the insured must be made in bad faith and must be material in nature and prejudicial in effect." *Union Assurance Society Limited, etc. v. Garver*, 223 Md. 412, 416, 164 A.2d 879 (1960), *quoting Indemnity Ins. Co.*, 197 Md. at 164, 78 A.2d 461.

---

**9.** The Snyders assert that the policy cancellation incidents in April and May led Mr. Hoover to retaliate against them. Opposition at 21. There is, however, no evidence that Mr. Hoover became angry with the Snyders until after he became suspicious of the claim in mid-August.

**10.** Notice provisions require that an insured notify the insurer of an accident or claim. *See e.g. Watson*, 231 Md. at 272–73, 189 A.2d 625.

Maryland: (1) disfavors the forfeiture of coverage; and (2) reads cooperation clauses to effectuate their purpose— the prevention of prejudice to the insurer. *Himelfarb*, 355 Md. at 682, 736 A.2d 295 (the law does not favor forfeitures), *citing United States Fire Ins. Co. v. Merrick*, 171 Md. 476, 490, 190 A. 335 (1937); *Allstate Insurance Company*, 363 Md. at 121, 767 A.2d 831, *explaining Fid. & Cas. Co. v. McConnaughy*, 228 Md. 1, 13, 179 A.2d 117 (1962)(cooperation clauses should be construed to effectuate their purpose— preventing prejudice to the insurer); *St. Paul Fire and Marine Insurance Company v. House, et al.*, 315 Md. 328, 356–57, 554 A.2d 404 (1989)(Murphy, C.J., dissenting)(purpose of prejudice requirement is to avoid unjust forfeitures and to restrict effect of provisions to their intended purpose: preventing prejudice to the insurer).

### 3. Cumberland's Evidence of Prejudice.

The burden of proving prejudice is on Cumberland. *See Allstate Insurance Company*, 363 Md. at 122, 767 A.2d 831. Cumberland has not offered any evidence of prejudice, relying instead on the incorrect assertion that prejudice is irrelevant in property loss cases. Reply at 1–2. Summary judgment on the breach of contract claim must be denied because Cumberland has not provided evidence of prejudice.

### III. Tort Claims Arising from Breach of Contract

The Snyders allege that Mr. Hoover's actions were malicious and therefore support a tort action arising out of their contractual relationship. Opposition at 20. They claim that the denial of their property claim resulted from Hoover's ill will toward them. *Id.* at 19–20, 767 A.2d 831. They also allege that the "very nature of the theft loss claim" supports "its own separate tort action" because of the deprivation of the means to replace the stolen goods. *Id.* at 23, 767 A.2d 831.

Contract remedies are exclusive for a failure to perform under a contract. *Mesmer et al. v. M.A.I.F.*, 353 Md. 241, 258–59, 725 A.2d 1053 (1999), *citing Matyas v. Suburban Trust Co.*, 257 Md. 339, 342, 263 A.2d 16 (1970); *see also Jones*, 356 Md. at 657, 741 A.2d 1099 (1999) (liability insurer's erroneous denial of coverage gives rise only to a breach of contract action). An insured may not bring a bad faith claim against an insurer for refusal to perform under a contract. *Yuen v. American Republic*, 786 F.Supp. 531, 533 (D.Md.1992), *citing Johnson v. Federal Kemper Ins. Co., et al.*, 74 Md. App. 243, 248, 536 A.2d 1211 (1988), *cert. denied* 313 Md. 8, 542 A.2d 844 (1988)("Maryland does not recognize a specific tort action against an insurer for bad faith failure to pay an insurance claim.").

The Snyders have not identified any independent legal duties applicable to Cumberland.[11] Therefore, the Snyders may not pursue tort claims against Cumberland.

### Conclusion

Because Cumberland has not offered any evidence of actual prejudice, summary judgment is inappropriate on the Snyder's breach of contract claim. The Snyders' failure to identify a cognizable basis for their bad faith, tortious breach of contract,

---

11. In Maryland, all insurance contracts contain an implied condition that the insurer investigate claims in good faith. *See Port East Transfer*, 330 Md. at 386, 624 A.2d 520. Because but for the contract, the good faith condition would not exist, the breach of the condition does not violate an independent duty. *See Mesmer*, 353 Md. at 253, 725 A.2d 1053.

and constructive fraud claims requires the grant of summary judgment on those claims.

*ORDER*

For the reasons stated in the Memorandum Opinion issued on this day, it is this 22nd day of May, 2003, ORDERED:

1. That Defendant's Motion for Summary Judgment on the breach of contract claim BE and hereby is DENIED;

2. That the Defendant's Motion for Summary Judgment on the Plaintiff's remaining claims BE and hereby is GRANTED;

3. That the Clerk of the Court mail copies of this Order and the Memorandum Opinion to counsel.